# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ANGIE MERCADO CORDOVA, et al.,** | |
| **Plaintiff,** | |
| **vs.** | **Civil No. 16-2195 (ADC)** |
| **WALMART PUERTO RICO, INC., et al.** | |
| **Defendants.** | |

## OPINION AND ORDER

Plaintiff Angie Mercado Córdova ("Mercado" or "plaintiff") filed a complaint against defendants Walmart Puerto Rico, Inc., and Sam's Club ("Walmart," "defendant" or "the company")[1] alleging unlawful discrimination, retaliation, and unjust dismissal in violation of numerous federal and Commonwealth of Puerto Rico ("Commonwealth") laws. **ECF No. 1**. Specifically, plaintiff brought claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117 *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *Id.* Plaintiffs also invokes this Court's supplemental jurisdiction over violations of the following laws: Act No. 100 of June 30, 1959, P.R. Laws Ann., tit. 29, § 146 *et seq.* ("Law 100"); Act No. 115 of December 21, 1991, P.R. Laws Ann., tit. 29, § 194 *et seq.* ("Law 115"); and Act No. 80 of May 30, 1976, as amended, 29 P.R. Laws Ann., tit. 29, §185a et seq. ("Law 80").

---

[1] As clarified by Walmart in its answer to the complaint, Sam's Club is one of Walmart's business names, rather than a separate legal entity. ECF No. 7 at 2.

*Id*. In essence, Mercado seeks monetary and declaratory relief as compensation for Walmart's alleged failure to reasonably accommodate her alleged disability, retaliation against her for engaging in protected conduct; and unjust dismissal in violation of the aforementioned statutes. *Id.*

Before the Court are defendant's (i) motion for summary judgment (**ECF Nos. 39, 43**); (ii) statement of uncontested facts (**ECF No. 39-1**); (iii) memorandum of law in support thereof (**ECF No. 41**); (iv) reply brief (**ECF No. 51**); and (v) responses to plaintiff's statement of additional uncontested material facts (**ECF No. 52**); as well as plaintiffs' (vi) memorandum of law in opposition (**ECF No. 46**); (vi) counterstatement of contested material facts and plaintiff's statement of additional uncontested material facts (**ECF No. 47**); and (vii) sur-reply brief (**ECF No. 55**). For the reasons discussed below, Walmart's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

## I. Factual and Procedural Background

Unless otherwise noted, the following relevant facts are derived from defendant's statement of uncontested facts, plaintiffs' responses and objections thereto, supporting exhibits, and the record as a whole. Moreover, consistent with the summary judgment standard, the Court states the facts in the light most favorable to plaintiffs, the non-moving party. *See Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006).

Mercado began to work for Walmart in August 2010 as Assistant Manager at the Sam's Club store located in Caguas, Puerto Rico. **ECF No. 39-1** at 3. She was transferred to the

Humacao store in May 2011 upon her request. *Id*. Sam's Club is a chain of membership-only retail warehouse clubs owned and operated by Walmart that sells most of its merchandise in bulk and directly off pallets. *Id*. at 1. The clubs are arranged warehouse-style, with merchandise stocked in steel bins. Products sold include apparel, food, jewelry, electronics, and collectibles. *Id*. Each Sam's Club in Puerto Rico has a Manager and several Assistant Managers who, in turn, are in charge of the different store departments. *Id*. at 5. At the Humacao store, Mercado was assigned first to the grocery department and then to the receiving department, and had Team Leaders and Associates work under her. *Id*.; **ECF No. 47** at 2.

The job description of Assistant Manager proffered by the company contains a list of duties and competencies. **ECF No. 43-9**. It also contains a list of "physical activities [that] are necessary in order to perform one or more of the essential duties of this position." *Id*. As discussed below, one of the required physical activities underlies the central factual and legal issues in this case—lifting merchandise and supplies that weight twenty-five pounds or less without assistance. *Id*.

From December 2013 to January 2015, Walmart granted various leaves of absence to Mercado that amounted to over 200 days, during which Mercado received from Walmart, salary continuation and family health plan coverage, among other employee welfare benefits. **ECF Nos. 39-1** at 22; **39-6** at 79-81, 88-108. Said leaves were related to an emotional condition and personal problems comprising an abusive relationship, the loss of custody of her two daughters, and a suicide attempt. *Id*. According to plaintiff, she stopped suffering from said emotional

condition after she regained custody of her daughters around July or August 2014. **ECF No. 39-6** at 78. Mercado also suffered, starting in 2009, from herniated discs, which caused her pain. **ECF No. 47** at 4. She received successful medical treatment and did not suffer from it again until December 2014. *Id.*; **ECF No. 39-6** at 61-64. By then, she "had difficulty walking and the pain radiated to her lower back in such intensity" that by January 2015, "she ended up in a wheelchair." **ECF Nos. 39-1** at 7; **39-6** at 64-68; **47** at 4.

On January 22, 2015, Dr. Luis Pío Sánchez-Caso ("Dr. Sánchez"), plaintiff's orthopedic-spine surgeon, issued a medical certificate indicating that he evaluated Mercado and diagnosed her with herniated lumbar discs and degenerative disc disease. **ECF No. 39-1** at 7. He further informed that she needed disc-implant spine surgery, and "that Mercado's recovery period after the surgery would last a minimum of three (3) months and up to one year." *Id*. at 7-8. Surgery was performed on February 6, 2015, and Mercado was on leave of absence with benefits from December 23, 2014, until her return to work from surgery convalescence on May 16, 2015. *Id*.

Upon her return to work in May 2015, Mercado submitted to Walmart a medical certificate by Dr. Sánchez indicating that Mercado could return to work with the following limitations: "[s]he cannot carry or push objects over 10 pounds. She cannot remain standing or seated for more than two hours without 10-15 minute rest periods." **ECF Nos. 39-1** at 8; **43-12** at 2. Mercado was reinstated and worked as Assistant Manager of the receiving department from May 16 until around May 28, 2015, when she submitted a second medical certificate of that same date from Dr. Sánchez stating as follows: "my patient is unable to return to work until further

notice. She was referred to [a] physiatrist for evaluation and physical therapy including aquaerobics. Also need home[ ]rest and prescription. Angie Mercado needs to finish this therapy for her well being." **ECF Nos. 39-1** at 9; **39-26**. Dr. Sánchez also informed that Mercado's next follow-up medical visit would be on July 9, 2015, when he would determine her return-to-work date. *Id.* Upon Walmart's receipt Dr. Sánchez's medical certificate of May 28, 2015, Vanessa García ("García"), People's Manager at Sam's Club in Humacao, gave Mercado a reasonable accommodation form and a medical questionnaire to complete in relation to her back condition and the related physical limitations indicated by Dr. Sánchez. **ECF No. 39-1** at 9; *see also* **ECF No. 43-13**.

On June 15, 2015, Mercado submitted the completed request for accommodation form and medical questionnaire, the latter signed by Dr. Sánchez. *Id*. In the request for accommodation form, Mercado informed that she continued to suffer from "continuous back pain when walking for prolonged periods of time and when bending down to lift objects." *Id*. Moreover, Dr. Sánchez indicated that "Mercado was physically restricted from lifting/carrying objects weighing more than ten (10) pounds, and recommended that she did not work more than eight (8) hours per day." *Id.*

On July 9, 2015, Dr. Sánchez issued another certificate informing that Mercado could return to work with the aforementioned restrictions, in addition to "not sitting down or standing up for more than two (2) hours without resting periods of 10-15 minutes. **ECF Nos. 39-1** at 9; **43-**

**14**. Mercado returned to work on or around July 13, 2015, even though her request for reasonable accommodation remained pending.

On August 4, 2015, Walmart issued its final determination regarding Mercado's request for reasonable accommodation, informing her that:

> The Accommodation Service Center (ASC) has completed review of your Request for Accommodation. However, we are unable to accommodate you in your current position because your restrictions prevent you from performing one or more essential job functions. An Assistant manager is required to be able to lift items weighing up to twenty-five pounds without assistance, while your health care provider states that you cannot lift over ten pounds. Unfortunately, there is no reasonable accommodation that would enable you to perform the essential functions of your job. Therefore, the Company would like to offer an alternative accommodation of reassignment. The company will conduct a search on your behalf for a suitable open position (lateral or below your pay grade) in your facility for which you are qualified and can perform within your restrictions, either with or without reasonable accommodation. You may, however, also apply for promotional transfer opportunities, or position in other facilities, that you can perform within your restrictions, either with or without a reasonable accommodation . . . . If a suitable position is currently available, you will be offered the position. However, if there is no suitable position immediately vacant you will be placed on personal leave while we continue the job search.

**ECF No. 39-1** at 9-10.

According to Mercado, García and General Manager José Ayerdi ("Ayerdi") met with Mercado on August 10, 2015, to discuss the notice and final determination. **ECF Nos. 39-1, 39-6** at 129-130. Mercado testified in her deposition under oath that, notwithstanding the content of the written notice of final determination, García and Ayerdi "told her that [she] could not continue working from that day on because [her] request had been denied because of the issue of the pounds; and that [she] had to apply for a position through wire and . . . go through the

whole application process again as a new employee with interviews and everything." *Id.* Based on that, "she believed to be terminated from her job on August 10, 2015." **ECF No. 47** at 6. Nonetheless, Mercado admitted in her deposition that after her August 10, 2015 meeting with García and Ayerdi, she continued to receive salary continuation and other benefits, and that the company addressed her ongoing leave of absence in various letters to her. **ECF No. 39-6** at 162-164; 184-188; *see also* **ECF Nos. 43-17, 43-18, 43-19, 43-21, 43-22, 43-23, 43-24, 43-25**. Specifically, she received salary-continuation benefits until March 5, 2016, and employer-sponsored health plan coverage for herself and her daughters until December 20, 2016. **ECF Nos. 39-1** at 2, 12; **39-6** at 162-164, 184-188; **43-24**; **43-25**. Furthermore, the salary continuation benefits Walmart granted to Mercado amounted to over twice the ninety-day period established under company policies. **ECF Nos. 7** at 5; **39-1** at 12-13; **39-6** at 162-164, 184-188; **43-17**; **43-24**; **43-25**.

On September 4, 2015, Mercado completed a request for reconsideration form in which she stated that she had never lifted objects weighing more than ten pounds in her job at Sam's Club, and that the company had not discussed the position's job description with her. **ECF Nos. 39-1** at 10; **39-6** at 152; **43-15**. In support of her request for reconsideration, Mercado submitted a medical certificate by Dr. Sánchez dated September 11, 2015. **ECF Nos. 39-1** at 10-11, **39-31**. In that certificate, Dr. Sánchez reiterated Mercado's need for periods of rest of ten to fifteen minutes after standing and sitting for two hours, and stated that Mercado could work regular, ten-hour shifts. **ECF No. 39-31**. He also stated that Mercado "can carry or push objects under her job description." *Id.*

The job description to which Dr. Sánchez referred was one provided to him by Mercado that includes contradictory information about the lifting requirement, since it states both a ten-pound and a twenty-five-pound minimum lifting capability. **ECF No. 39-6** at 131-133. The record is unclear as to how Mercado obtained that job description. She alleges to have received it from García, who in turn denied in her deposition of having given Mercado any job description. **ECF Nos. 39-6** at 131-134; **39-8** at 107. Nonetheless, it is uncontested that the job description that Mercado gave to Dr. Sánchez was for the position of Wholesale Trading Manager, not Mercado's Assistant Manager position, which no longer existed. **ECF No. 39-1** at 6.

As summarized above, the job description for the Assistant Manager position proffered by the company states that the ability to lift up to twenty-five pounds is required in order to be able to perform the job's essential duties. **ECF Nos. 39-1** at 5-6; **43-9**. Even though it was Walmart's custom and practice to provide a new employee with a copy of his/her job description, the record is not clear as to whether Mercado received a copy of the Assistant Manager job description when she started working at Sam's Club. **ECF No. 39-1** at 131-137; **52** at 1. Mercado testified in her deposition that she does not recall having received a copy of the Assistant Manager job description until Ayerdi provided it to her upon her request after Walmart's August 4, 2015 denial of Mercado's request for accommodation. **ECF No. 39-6** at 131-137. On the other hand, Walmart did not produce any document or evidence of Mercado acknowledging receipt of such document.

In any event, her main factual contention in this case is that irrespective of what is stated in the Assistant Manager job description proffered by Walmart, while performing as Assistant Manager at Sam's Club, she never had to lift objects heavier than ten pounds, and as such, said requirement is not necessary to perform the essential duties of the job. *Id.* at 220-221, 225-226. Mercado further asserts that if she needed help lifting objects, she could ask for help from the Associates who worked under her supervision, who also had within their job description the task of lifting objects. *Id.* at 220-221. Mercado proffered not only her own testimony in support of that contention, but also that of Assistant Manager Juan Carlos Torres ("Torres"). **ECF Nos. 39-20** at 57; **46** at 20-22; **47** at 3-4. Specifically, he stated:

> [PLAINTIFF'S COUNSEL]: What happens if an [A]ssistant Manager has to lift an object and cannot do it?
> [OPPOSING COUNSEL]: Objection to the form of the question.[2]
> [JUAN CARLOS TORRES]: In my case, if I cannot lift something because it is too heavy then I will ask for help from someone on the floor in order to help the member. And then between the [A]ssociate and myself would lift it up and help the member.

**ECF No. 39-20** at 57. Torres also testified that "[t]he [A]ssociate's duties on the floor are almost the same as those of a manager. They have to verify the rotation of the merchandise . . . verify the inventories . . . [i]f the member request[s] help in order to place merchandise in a car he has to be helped. Basically as a [M]anager also." *Id.* at 35.

---

[2] As argued by Walmart in its responses to plaintiff's statement of additional uncontested facts, "[t]he objection was precisely addressed to the lack of specificity [of] the question regarding the weight of the object. Without such reference the response is immaterial to the issue of the [Assistant Manager] job's essential functions." **ECF No. 52** at 3.

On September 28, 2015, Walmart denied Mercado's request for reconsideration, reasserting its position about the lifting requirement, and that "excusing the performance of an essential function is not reasonable." **ECF Nos. 39-1** at 11; **39-32**. Additionally, the company reiterated that "reassignment as an equally effective alternative accommodation" remained available if a suitable position arose during the 12-week reassignment period. **ECF No. 39-32**. Notwithstanding what Walmart stated in its notice of denial of request for reasonable accommodation, according to Mercado, Ayerdi told her that if her treating physician indicated in a medical certificate that she could lift up to 25 pounds, she could return to work as Assistant Manager. **ECF No. 39-6** at 170-171.

On October 23, 2015, Mercado filed a charge of discrimination before the Puerto Rico Department of Labor's Anti-Discrimination Unit for disability-based discrimination. **ECF No. 43-16**.[3]

---

[3] The following is a quote of Mercado's entire claim contained in her administrative charge, **ECF No. 43-16** at 6, given its importance in relation to Walmart's motion for summary judgment, particularly as to the issue of exhaustion of administrative remedies:

> I started working with employer on the day of August 30, 2010 in a Managerial nature. After going to my physician he referred me to a surgeon on the day of January 22, 2015, which was notified to my employer, I also told them that I would be have [sic] an operation on the day of February 6, 2015. After being operated on and being in recovery on leave, the physician gave me a certificate with various restrictions to return on the day of May 16, 2015 [sic] the employer did not give me reasonable accommodation (document) and I was working without the recommendations of the physician. At the end of May, I had a relapse and in June was when the employer then gave me a reasonable accommodation document that was submitted on the day of 7/13/15 on which I again returned with medical recommendations and employer let me work without them. On the day of 8/10/15 they told me that I could not continue working because I did not fulfill the essential duties of my Job description. They told me that I should reapply and go through the interview process as if I were new and if I didn't get it I would be fired on October 27, 2015. I made an appeal and my

In letters to Mercado sent via certified mail on March 2, March 16, and April 1, 2016, Walmart followed up on its request for an updated medical certification regarding Mercado's lifting restrictions, since Dr. Sánchez's certificate of September 2015 indicated that she could "carry or push objects under her job description[,]" whereas his July 2015 certificate established a ten-pound lifting limitation. **ECF Nos. 39-1** at 12-15; **39-31**; **43-17**; **43-18**; **43-19**. Even though said letters were sent to Mercado's correct mailing address, they were returned as undeliverable, for which the company opted thereon to send all written communications both to her mailing address and in care of her attorney of record in this case. **ECF Nos. 39-1** at 12-19; **39-6** at 11.

On April 11, 2016, Mercado submitted to the company a second reasonable accommodation request packet, including a medical certificate by Dr. Sánchez confirming Mercado's ten-pound lifting restriction. **ECF No. 39-1** at 15; **43-20**. The company deemed that Dr. Sánchez's latest certificate was ambiguous as to whether the lifting restriction was temporary or permanent. **ECF Nos. 39-1** at 15-16; **43-21**. As such, on April 22, 2016, it sent Mercado a letter requesting Mercado to provide a medical certificate indicating specifically: (1) the duration of the lifting limitation; and (2) the prognosis of Mercado's condition. **ECF No. 43-21**. Mercado never provided Walmart with the requested certificate, even though the company followed up with her via letters of May 23, July 22, and August 9, 2016. **ECF Nos. 39-1** at 17-20; **39-6** at 147-148.

---

physician made a medical certificate, they reviewed it and on the day of 10/12/15 they delivered the final determination of my appeal referring to the same thing.

On May 2, 2016, the company issued its final determination denying Mercado's second request for reasonable accommodation for the same reasons it denied her first request. **ECF Nos. 39-1** at 16; **39-42**. In the final determination letter, the company reiterated its intention to offer "an alternative accommodation of reassignment." **ECF No. 39-42**. In fact, the company offered Mercado part-time positions as Greeter and as Phone Attendant. **ECF Nos. 39-1** at 17-21; **43-22**; **43-24**. According to Mercado, she never responded to said job offers because those positions were part-time and at an hourly wage lower than what she earned as Assistant Manager, and because she had an ongoing legal action against the company. **ECF Nos. 39-6** at 180-181; **43-26**. Nonetheless, around April or May 2016, Mercado applied for the position of Home Merchandise Assistant Manager. **ECF No. 39-1** at 20-22. "Aside from submitting the application, Mercado did not mention to anyone from Human Resources her interest in being selected for the position." *Id*. at 21.

The recruitment process for the Home Office Merchandise Assistant position was executed in part by Ana Rosario ("Rosario"), People's Manager of Walmart's Puerto Rico home office in Caguas. *Id*. at 20-21. In the pre-screening process, Rosario called Mercado at both of her telephone numbers on record, but Mercado did not answer. *Id*. at 21. Rosario contacted Irelina Lebrón ("Lebrón"), Walmart's Human Resources Market Manager, for additional contact information for Mercado. *Id*. at 21. Lebrón informed Rosario that Mercado was on medical leave, and Rosario, who was unaware of Mercado's reasonable accommodation requests, continued with the pre-screening process. *Id*. The record is not clear as to whether Rosario or anyone else

from Walmart attempted to contact Mercado again about the job vacancy. And, although Mercado contends that the position in question was equivalent to the Assistant Manager job, the record lacks information as to whether she was qualified for the Home Office Merchandise Assistant position. Walmart ultimately offered this job to another internal candidate. *Id.* at 22.

On May 17, 2016, the Equal Employment Opportunity Commission ("EEOC") closed the administrative case as to Mercado's charge and issued the notice of right to sue. **ECF Nos. 39-1 at 17; 39-43**. On June 27, 2016, Mercado filed the instant complaint, alleging, in essence, that Walmart discriminated against her due to her disability by denying her a reasonable accommodation and dismissing her. **ECF No. 1**. She alleged that her dismissal was in retaliation for requesting a reasonable accommodation and taking short-term disability leave. Mercado also alleged that her dismissal was discriminatory and retaliatory, and that she was subject to a retaliatory work environment. *Id*.

On August 9, 2016, Walmart sent Mercado a letter reprising the prior requests and follow-up for additional medical certification from Dr. Sánchez, the part-time job offers as Greeter and Phone Attendant, and the expiration on that date of her leave of absence pursuant to Walmart policy. **ECF Nos. 39-1 at 18; 43-24**. The company further indicated that it was "imperative for [Mercado] to contact [Walmart] as soon as possible to determine the course to follow with regard to [her] employment." **ECF No. 43-24** at 1. Walmart forewarned that if Mercado did not communicate with the company within ten days, it would deem that she was "not interested in continuing with the process of reasonable accommodation, or in returning to [her] job." *Id.*

Mercado did not respond to the August 9, 2016 letter, and on December 2, 2016, Walmart sent a

letter to Mercado informing her that "in light of her lack of communication" during the past

months, her employment would end effective December 20, 2016, "on the grounds of job

abandonment." **ECF No. 43-25** at 1. The company also informed Mercado that her health-plan

benefits would end on the effective date of her termination, with coverage-continuation options

under COBRA. *Id*. at 2.

On December 16, 2016, Mercado sent a letter to the company acknowledging receipt of

the December 2, 2016 notice of employment termination. **ECF No. 43-26**. Furthermore, plaintiff

stated that:

> Sam's has not carried out the reasonable accommodation process in a serious
> manner or in good faith. Every time that I took reasonable accommodation
> documents to my doctor, you asked me to change the letter so that my doctor could
> authorize me to lift pounds that I cannot lift. It is impossible to conduct an
> interactive process this way. . . With regard to the positions of "Member Services
> Greeter" and "Phone Attendant," I never contacted you because they are part-time
> and the pay per hour is much lower than what I was receiving. . . I was always
> interested in the reasonable accommodation process, but one that was fair and
> took my health condition into account, which Sam's did not do.

*Id*. at 1.

On that same date, plaintiff was terminated by Walmart.

## II. SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56, "[s]ummary judgment is appropriate when there is no genuine

issue as to any material fact and the moving party is entitled to judgment as a matter of law

based on the pleadings, depositions, answers to interrogatories, admissions on file, and any

affidavits." *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008) (quoting the former Fed. R. Civ. P. 56(c)).[4] When ruling on a motion for summary judgment, a court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences." *Noviello v. City of Boston*, 398 F.3d 76, 84 (1st Cir. 2005). However, the non-movant "must point to competent evidence and specific facts to stave off summary judgment" in order to defeat a properly supported motion for summary judgment. *Tropigas de Puerto Rico v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011). Thus, the Court may "afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Id.* (citing *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001) (internal quotation marks omitted)). In addition, the "absence of evidence on a critical issue weighs against the party—be it the movant or the nonmovant—who would bear the burden of proof on that issue at trial." *Alamo Rodríguez v. Pfizer Pharma., Inc.*, 286 F. Supp.2d 144, 151 (D.P.R. 2003) (citing *Pérez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1st Cir. 2001)). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Thompson*, 522 F.3d at 175 (citing *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996))

---

[4] While Rule 56 was amended, effective December 1, 2010, "[t]he substantive standard for summary judgment remain[ed] unchanged." *Ahern v. Shinseki*, 629 F.3d 49, 53 n.2 (1st Cir. 2010) (citing Fed. R. Civ. P. 56 advisory committee's note). The primary alteration is the inclusion of a "procedures" section, which, in part, incorporates a common procedure for presentation of factual evidence and an anti-ferreting rule, similar to those already in place in this District, into the summary judgment standard. *Compare* Fed. R. Civ. P. 56(c), with *id.* R. 56(f).

(internal quotation marks omitted). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008).

To defeat a properly supported motion for summary judgment, evidence offered by the non-movant "must be significantly probative of specific facts." *Pérez*, 247 F.3d at 317 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). As a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vázquez v. López-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998).

Furthermore, as stated by the U.S. Supreme Court, it is well settled that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [s]he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citations and internal quotation marks omitted). As such, "[c]ourts use special caution in granting summary judgment as to intent. Intent is often proved by inference, after all, and on a motion for summary judgment, all reasonable inferences must be drawn in favor of the nonmoving party." *In re Hannon*, 839 F.3d 63, 72 (1st Cir. 2016); *see also Anderson*, 477 U.S. at 255.

In other words, "[t]he role of the trial judge at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Hodgens. v. Gen. Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998). Accordingly, trial courts should act with caution in granting summary judgment, and should

deny summary judgment in a case where it deems that the better course would be to proceed to

a full trial. *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

### A.      Plaintiff's Exhaustion of Administrative Remedies

A claimant under the ADA must exhaust administrative remedies under section 2000e-

5(e)(1) of Title VII as a prerequisite to filing suit before this Court. *See Zipes v. TransWorld Airlines,*

*Inc.*, 455 U.S. 385, 392-398 (1982); *Bonilla v. Muebles J.J. Álvarez, Inc.*, 194 F.3d 275, 277 (1st Cir.

1999). Specifically, an ADA claimant must file an administrative claim either within 180 days if

submitted before the EEOC, or within 300 days if presented before a state agency with

jurisdiction to receive such claims. *Bonilla*, 194 F.3d at 277; *see Pérez v. Municipality of Añasco*, 769

F. Supp.2d 52 (D.P.R. 2010). In his/her administrative charge, a claimant is required "to provide

the employer with prompt notice of the claim and to create an opportunity for early

conciliation." *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996). Accordingly, "in

employment discrimination cases, [t]he scope of the civil complaint is . . . . limited by the charge

filed with the EEOC and the investigation which can reasonably be expected to grow out of that

charge." *Id.* at 464 (internal citations and quotations marks omitted).

Walmart contends in its summary judgment motion that Mercado did not exhaust

administrative remedies for her dismissal claim, because she did not amend her administrative

charge of discrimination to include her subsequent employment termination. **ECF No. 41** at 11-

13; *see* **ECF Nos. 1**; **43-16**. Moreover, Walmart avers that Mercado did not exhaust administrative

remedies as to her claim for retaliatory hostile work environment under the ADA, inasmuch as her charge is entirely lacking in such allegations.

The central factual allegation of Mercado's administrative charge was that on August 15, 2015, Walmart informed her that she "could not continue working because [she] did not fulfill the essential duties of [her] [j]ob description." **ECF No. 43-16** at 6. Subsequently, in her complaint before this Court, Mercado alleged that "Sam's Club terminated her because they allegedly were not able to provide the reasonable accommodation she was requesting," and that her dismissal was "in retaliation for her request for reasonable accommodation and for receiving benefits under SINOT." **ECF No. 1** at 5-6, 9.

Insofar as Mercado's termination of December 16, 2016, is rooted on the same nucleus of operative facts alleged in the administrative charge, Mercado did not need to amend her charge to include the final act of termination in order to comply with the exhaustion of administrative remedies requirement regarding her dismissal claim. *See, e.g., Clockedile v. New Hampshire Dep't of Corr.*, 245 F.3d 1, 6 (1st Cir. 2001) ("retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency-- *e.g.*, the retaliation is for filing the agency complaint itself."); *Id.* at 6; *see Franceschi v. U.S. Dep't of Veterans Affairs*, 514 F.3d 81, 86 (1st Cir. 2008). Nonetheless, Mercado did not include in her administrative charge any allegation of harassment or hostile work environment, nor do such allegations arise in any way from those contained in the administrative charge. **ECF No. 43-16** (see supra n. 3).

Accordingly, the Court holds that Mercado did not exhaust administrative remedies regarding her claim of retaliatory work environment. *See Lattimore*, 99 F.3d at 464.

        **B.     Plaintiff is a Disabled Individual Under the ADA, as Amended.**

    **1- Applicable Law**

In the context of employment, a covered individual under the ADA is one with a "disability" who, with or without a reasonable accommodation, can perform the essential functions of the job. The cornerstone of the definition, and the *sine qua non* requirement for ADA protection, is whether the individual has a "disability," as defined by the ADA. 42 U.S.C.§ 12102(2); *see Sutton v. United Air Lines Inc.*, 527 U.S. 471, 477-478 (1999). The statute lists three alternative definitions of "disability," of which a claimant must at least satisfy one: (a) a physical or mental impairment which substantially limits one or more of a person's major life activities; (b) a record of having such impairment; or ( c) if the individual is being regarded as having such impairment. 42 U.S.C. § 12102(2); *see Sutton*, 527 U.S. at 471. A "major life activity", as the term is used in the ADA 's definition of disability, stands for the basic activities that the average person can perform with little or no difficulty. The EEOC has stated that "major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communication, interacting with others, and working." 29 C.F.R. § 1630.2(i). *See Bragdon v. Abbot,* 524 U.S. 624, 630-642 (1998).

Common to the definitions of a covered disability under the ADA is the requirement that the physical or mental impairment must "substantially limit one or more of the person's major life activities." *See Lessard v. Osram Sylvania Inc.,* 175 F.3d 193, 199 (1st Cir.1999). The EEOC regulations define the term "substantially limits" as the (1) inability to perform a major life activity, or (2) a severe restriction on the ability to perform a major life activity as compared to the general population. 29 C.F.R. § 1630.2(j)(1). Three factors to consider in determining whether a person's impairment substantially limits a life activity are: (1) the nature and severity of the impairment, (2) how long it will last or is expected to last, and (3) its permanent or long-term impact, or expected impact. *Id*. at § 1630.2(j)(4); *see Guzmán-Rosario v. United Parcel Serv., Inc.,* 397 F.3d 6, 10 (1st Cir. 2005); *Wright v. CompUSA, Inc.,* 352 F.3d 472, 475 (1st Cir. 2003).

As mandated under the Americans with Disabilities Act Amendment Act ("ADAAA"), 42 U.S.C.A. §12102 *et seq.*, and as construed in ensuing regulatory provisions, "[t]he term 'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower" than the pre-ADAAA standard. 29 C.F.R. §1630.2(j)(iv). Said term "should be interpreted consistently with the ADA's purpose of 'broad coverage of individuals . . . to the maximum extent permitted by the terms of this Act.'" *García-Hicks v. Vocational Rehab. Administration*, 148 F. Supp. 3d 157, 163 (D.P.R. 2015) (quoting pertinent sections of the ADAAA). Pursuant to the EEOC regulations implementing ADAAA provisions,

> An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or

significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2. *See García-Hicks, 148 F. Supp.3d* at 163-168.

"The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." 29 C.F.R. § 1630.2(j)(1)(vi). In addition, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." *Id*. at § 1630.2(j)(1)(vii). In all cases, the determination as to whether an individual is disabled under the ADA warrants a fact- and case-specific analysis. *See* 42 U.S.C.A § 12102; *Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act*, C.F.R. § 1630 *et seq.*; *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 20 (1st Cir. 2004).

**2- Discussion**

Walmart argues that Mercado is not disabled under the ADA, because her inability to lift more than ten pounds is not an impairment that substantially limits a major life activity. **ECF Nos. 41** at 2-7; **51** at 3-7. In support of its contention, Walmart cites First Circuit case law outside the scope of applicability of the ADAAA, particularly in relation to heavy-lifting limitations. *Id*. "[R]ecent First Circuit Court of Appeals cases . . . do not apply the post-ADAAA standard of 'substantially limits' because the events giving rise to the litigation in these cases occurred prior to January 1, 2009, the effective date of the ADAAA." *García-Hicks v. Vocational Rehab. Administration*, 148 F. Supp.3d at 166. For instance, in *McDonough v. Donahoe*, 673 F.3d 41, 48 (1st

Cir. 2012), the First Circuit held that "limitations on lifting, without more, are not a substantial limitation on a major life activity." (quoting *Prescott v. Higgins*, 538 F.3d 32 (1st Cir. 2008) (temporary inability to engage in heavy lifting after eye surgery did not amount to a disability)). *See also, e.g., Thornton v. United Parcel Serv., Inc.*, 565 F. Supp.2d 273 (D. Mass. 2008), *aff'd*, 587 F.3d 27 (1st Cir. 2009) (delivery truck driver who suffered back and shoulder injuries, was not disabled under the ADA despite lifting restrictions imposed by treating physician); *Gillén v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 22 (1st Cir. 2002) ("[I]f a restriction on heavy lifting were considered a substantial limitation on a major life activity, then the ranks of the disabled would swell to include infants, the elderly, the weak, and the out-of-shape"); *Ortiz Molina v. MAI del Caribe, Inc.*, 83 F.Supp.2d 271, 274-277 (D.P.R. 2000) (back condition that limited lifting ability did not substantially limit the major life activity of working). However, the ADAAA is fully applicable to the instant case, given the time when the pertinent facts took place.

Moreover, Walmart asserts that Mercado, "for the first time, alleged in her opposition to the motion for summary judgment that she was substantially limited in the major life activity of working. No such averment is included in the [c]omplaint." **ECF No. 51** at 4. According to Walmart, "she should not be allowed to amend the complaint through her opposition to the motion for summary judgment." *Id*. (citing, e.g., *Ruiz Rivera v. Pfizer Phamaceuticals, LLC*, 521 F.3d 76, 84-85 (1st Cir. 2008)). Walmart further argues that even if she had timely alleged disability status regarding her ability to work, "her claim would fail" because she has not established that she is unable to engage in a broad category or class of jobs, as required under

the ADA. *Id*. at 6 (citing, e.g., *Ramos Echevarría v. Pichis, Inc.*, 659 F.3d 182, 189 (1st Cir. 2011)).

Mercado counters that she is disabled under the ADA due to her inability to lift more than ten

pounds. She also avers that "because she is unable to perform any job that requires a minimum

lifting . . . she is unable to work anywhere that she might need to move a small object weighing

more than ten (10) pounds." **ECF No. 46** at 15, n.3.

Walmart is correct in that Mercado's allegation of disability based on work is tardy and

unsubstantiated. *See* 42 U.S.C.A. sec. 12102(1); 29 C.F.R. sec. 1630.2(j); *Ruiz Rivera*, 521 F.3d at 84-

85; *Ramos Echevarría*, 659 F.3d at 189. However, Mercado's failure in that respect is not

dispositive as to whether she is disabled under the ADA, as amended by the ADAAA. As

summarized above, Mercado has demonstrated that as a result of a serious back condition

dating back to 2009, she is unable to lift more than 10 pounds. Thus, she is impaired in what is

considered a major life activity under applicable law-- lifting. 29 C.F.R. § 1630.2(i); *Guillén v.*

*Fallon Ambulance Service, Inc.*, 283 F.3d 11, 21 (1st Cir. 2002). Moreover, Walmart's contention

that a 10-pound lifting impairment is not substantial enough for ADA coverage is not supported

under ADAAA standards. Pursuant to the same, "a back impairment is sometimes considered

a disability." *Id*. at 166–67 (citing EEOC Proposed Rules, 74 Fed. Reg. at 48442).[5] "For example,

an individual with a back impairment that limits standing, walking, or lifting over twenty

---

[5]  As held in this District, although the tables in the EEOC Proposed Rules "which categorize certain impairments as those that 'almost always,' 'sometimes,' and 'never' constitute a disability' . . . were not included in the final EEOC regulation, they still shed light on Congress'[s] intended interpretation" of the ADAAA." *García-Hicks v. Vocational Rehab. Administration*, 148 F. Supp. 3d 157, 167 (D.P.R. 2015).

pounds and that is expected to last for several months is an individual with a disability." *García-Hicks*, 148 F. Supp.3d at 167; *see also Molina v. DSI Renal, Inc.*, 840 F. Supp.2d 984, 993-996 (W.D.Tex.2012) (finding that lumbar pain from disc derangement that limits walking and standing would likely not have been considered a disability prior to the ADAAA, but may be considered a disability pursuant to ADAAA standards).[6]

In light of the above, the Court finds that Mercado's 10-pound lifting impairment constitutes a substantial limitation to a major life activity under ADAAA standards. Accordingly, she has met her burden to establish that she is a disabled individual covered under said statute. In that respect, Mercado's failure to include in her complaint that she is disabled in the major life activity of work does not prove fatal to her claim, nor does her status as disabled under the ADA, as amended by the ADAAA, hinge on whether she can prove to be unable to work a broad class or category of jobs due to her impairment.

### C.   Genuine Issues of Fact Preclude Summary Judgment Regarding the Essential Duties of Mercado's Assistant Manager Position.

#### 1.   Applicable Law

A disabled claimant under the ADA, as amended by the ADAAA, must prove to be qualified to perform the essential duties of his/her job with or without reasonable accommodation. 42 U.S.C § 12112(a); *see Lang v. Wal-Mart Stores East, L.P.*, 813 F.3d 447, 454 (1st

---

[6] Mercado points to pre-ADAAA case law also holding that a lifting impairment of 10 to 20 pounds may sometimes render a claimant disabled under the ADA. See **ECF No. 46** at 7, 12 (citing *Picinich v. United Parcel Service*, 321 F. Supp.2d 485, 502 (N.D.N.Y. 2004); *Whitfield v. Pathmark Stores, Inc.*, 39 F. Supp.2d 434 (D.Del. 1999); and *Wheaton v. Odgen Newspapers, Inc.*, 66 F. Supp.2d 1053 (N.D. Iowa 1999)).

Cir. 2016). "Given the close "interrelationship between the terms 'essential functions' and 'reasonable accommodation,'" the pertinent analysis entails "two steps: (i) whether the employee could perform the essential functions of the job; [and] (2) if not, whether any reasonable accommodation by the employer would enable him to perform those functions." *Ward v. Massachusetts Health Research, Inc.*, 209 F.3d 29, 33 (1st Cir. 2000). The determination of what constitutes the essential duties of a job entails a fact-specific analysis regarding which various factors may be considered. *Guillén*, 283 F.3d at 25. The ADA expressly provides that "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C.A. sec 2111. "However, 'the employer's good-faith view of what a job entails, though important, is not dispositive.'" *Rooney v. Sprague Energy Corp.*, 483 F.Supp.2d 43, 51 (D. Me. 2007) (quoting *Guillén*, 283 F.3d at 25). The EEOC regulations provide the following guidance:

> Evidence of whether a particular function is essential includes, but is not limited to:
> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

**2.      Discussion**

According to Walmart, the ability to lift objects that weigh up to twenty-five pounds without assistance is a physical requirement of the Assistant Manager job that is necessary to perform essential duties of that position. **ECF Nos. 41** at 7-11; **51** at 5-7; **52** at 1-4. In support of its contention, Walmart proffered a job description of the Assistant Manager position stating said physical requirement, as well as the deposition testimony of other Assistant Managers to that effect. **ECF No. 43-9**. Thus, Walmart asserts that Mercado cannot perform the essential duties of the Assistant Manager position, inasmuch as she is unable to lift more than ten pounds without assistance. Moreover, Walmart asserts that there is no reasonable accommodation that would enable Mercado to lift more than ten pounds, and the ADA does not require an employer to exempt employees from essential job requirements. **ECF Nos. 41** at 7-11; **51** at 5-7; **52** at 1-4.

Conversely, Mercado avers that she is fully able to perform the essential duties of the Assistant Manager position, and she testified in her deposition that she never had to lift more than ten pounds without assistance in her years as Assistant Manager of Sam's Club. **ECF Nos. 46** at 17-24; **47** at 3-4; **55** at 2-7. She also alleges to have seen the Assistant Manager job description proffered by Walmart for the first time in 2015, after she requested a reasonable accommodation following back surgery, even though according to her, it was company policy for Walmart to provide a new employee with a copy of the job description at the beginning of his/her employment. *Id*. Moreover, she asserts that it was a common practice at Sam's Club for Assistant Mangers to request assistance for Associates lifting objects that they could not lift on their own,

and proffered Assistant Manager Juan Carlos Torres's testimony to that effect, as summarized above. *Id*.

Applying the EEOC guidelines' factors quoted above to determine whether the job requirement in question is essential, the Court finds that the first two factors are uncontested in favor of Walmart's position. *See* 29 C.F.R. § 1630.2(n)(3). Specifically, the Assistant Manager job description pertaining to Mercado's job states that the ability to lift up to twenty-five pounds without assistance is an essential physical requirement to perform essential duties, and Walmart emphatically stands by said description. However, there are contested material facts regarding the third, fourth, sixth, and seventh factors—that is, whether in practice, Assistant Managers had to lift objects of up to 25 pounds, and if so, whether they could, and did, ask for and obtain assistance to lift objects when they could not do so by themselves, as claimed by Mercado.

In short, the Court finds a jury-trial-worthy issue that precludes summary judgment regarding the central question of whether the ability to lift up to twenty-five pounds without assistance is an essential physical requirement for the performance of essential duties of the Assistant Manager position.

**D.     Genuine Issues of Fact Preclude Summary Judgment as to Whether Walmart Failed to Provide Reasonable Accommodation to Plaintiff.**

**1.     Applicable Law**

To assert a claim for failure to accommodate under the ADA, Mercado is required to establish the following: (1) that she suffered from a disability within the meaning of the statute;

(2) that she was a qualified individual in that she was able to perform the essential functions of her job, with or without a reasonable accommodation; and (3) that, despite Walmart's knowledge of her disability, the Walmart did not offer a reasonable accommodation for her disability. *See Valle-Arce v. P.R. Ports. Auth.*, 651 F.3d 190, 198 (1st Cir. 2011). Reasonable accommodations may include job restructuring measures such as "part-time or modified work schedules, reassignment to a vacant position, acquisition or modifications of equipment or devices, adjustment or modification of examinations, training materials, or policies . . . and other similar accommodations for individuals with disabilities." 29 C.F.R. §1630.2(o)(2).

As held by the First Circuit, "[a]lthough a reasonable accommodation may include job restructuring, 42 U.S.C. § 12111(9)(B), an employer need not exempt an employee from performing essential functions, nor need it reallocate essential functions to other employees." *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 26 (1st Cir. 2001) (citing *Feliciano*, 160 F.3d at 785; *Soto-Ocasio v. Fed. Express Corp.*, 150 F.3d 14, 20 (1st Cir.1998). Furthermore, "[a]n employer is not required by the ADA to create a new job for an employee, nor to re-establish a position that no longer exists." *Phelps*, 251 F.3d at 27. Nonetheless, the offer of reassignment to an available equivalent position may constitute reasonable accommodation. 29 C.F.R. § App. § 1630.2. And an offer of reassignment to a lower position may be reasonable as an accommodation of last resort. *Id.*; *see Matos v. DeVos*, 317 F. Supp.3d 489, 503 (D.C. 2018); *Harris v. Chao*, 257 F. Supp.3d 67, 77 (D.C. 2017). Specifically, "an employer may reassign an individual to a lower grade position if there are no accommodation[s] that would enable the employee to remain in the

current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation. *Matos*, 317 F. Supp.3d at 503 (citing 29 C.F.R. § App. Pt. 1630.2(o) (internal quotation marks omitted)).

To show that a proposed accommodation is reasonable, a plaintiff must prove "not only that the proposed accommodation would enable her to perform the essential functions of her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances." *See Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir. 2001). Furthermore, the request for accommodation must be "sufficiently direct and specific, giving notice that she needs a special accommodation." *Id.* at 261 (quoting *Wynne v. Tufts Univ.*, 976 F.2d 791, 795 (1st Cir. 1992) (internal quotations omitted)). Additionally, a claimant who establishes that he is a qualified individual with a disability in need of accommodation to perform the essential duties of his job is not entitled to the accommodation of his choice, but rather to reasonable accommodation. *Castro-Medina v. Procter & Gamble Commercial Co.*, 565 F. Supp.3d 343, 375 (D.P.R. 2008); *Alamo-Rodríguez*, 286 F.Supp.21d at 151. A careful, individualized review of an accommodation request in light of the specific facts of the case is needed to determine whether the request was reasonable. *García-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 647 (1st Cir. 2000).

"An employee's request for accommodation sometimes creates a duty on the part of the employer to engage in an interactive process," entailing an "informal dialogue between the employee and the employer in which the two parties discuss the issues affecting the employee

and potential reasonable accommodations that might address those issues." *E.E.O.C. v. Kohl's Dept. Stores, Inc.*, 774 F.3d 127, 132 (1st Cir. 2014); (citing 29 C.F.R. § 1630.2(*o*)(3)). Both employer and employee are bound to cooperate and communicate in good faith in the interactive process. *Phelps*, 251 F.3d. at 27-28. A breakdown in the process caused by the employee may preclude employer liability regarding a request for reasonable accommodation, and vice versa. *Id*.

### 2.      Discussion

### (a)      Mercado's Request for Reinstatement to the Position of Assistant Manager with Ten-Pound Lifting Restriction as Reasonable Accommodation

There are controversies of material fact that preclude summary judgment as to whether granting Mercado's request for reinstatement to the Assistant Manager job with the ten-pound lifting restriction indicated by her treating physician constitutes reasonable accommodation under the ADA. As summarized above, Walmart contends that the ability to lift up to twenty-five pounds without assistance is required to perform essential functions of the Assistant Manager position, as evidenced by the job description proffered by the company and as testified by some company managers. As such, Walmart asserts that allowing Mercado to return to her position without being able to lift twenty-five pounds or more on her own is tantamount to exempting her from having to perform essential duties of the job that require such physical capability. That, in turn, would not constitute reasonable accommodation under ADA standards, according to Walmart. **ECF Nos. 41** at 7-11, 20-28; **52** at 7-9.

However, Mercado testified in her deposition that she never had to lift in excess of ten pounds in her years as an Assistant Manager, for which the requirement in question is not essential to the job. She further contends that irrespective of the lifting requirement contained in the Assistant Manager's job description proffered by the company, Assistant Managers at Sam's Club are able to ask Associates for help in lifting objects as needed, and that her averment in that respect is supported by Torres's deposition testimony. Thus, Mercado deems that Walmart unreasonably denied her request for reinstatement as Assistant Manager with a ten-pound lifting restriction, in violation of the ADA. **ECF Nos. 46** at 17-24; **55** at 2-7.

In short, the question of whether Mercado's reinstatement in her job as Assistant Manager with a ten-pound lifting restriction constitutes reasonable accommodation under the ADA is not one that is apt for summary disposition under Rule 56. The underlying questions of material facts call for credibility determinations and weighing of evidence, thus warranting a jury trial. See *Anderson*, 477 U.S. at 255; *Hodgens*, 144 F.3d at 168. While it is uncontested that the job description for the Assistant Manager position included the ability to lift in up to twenty-five pounds without assistance as an essential requirement, there is a factual controversy as to whether that was an essential requirement in practice.

**(b)      Walmart's Offers of Job Reassignment as Reasonable Accommodation**

Walmart avers that there was no reasonable accommodation that could have enabled Mercado to lift up to 25 pounds without assistance. **ECF Nos. 41** at 7-11; **51** at 7-9. Thus, it offered her reassignment to other positions as alternative reasonable accommodation after it

denied her request for reinstatement to the Assistant Manager position with the ten-pound lifting restriction indicated by her treating physician. **ECF Nos. 41** at 20-28; **51** at 7-9. Specifically, Walmart offered her part-time positions as Greeter and Phone Attendant, but Mercado did not respond Walmart's follow-up multiple letters over several months about the job offers and the pending updated medical information about her lifting restriction and its prognosis. According to Walmart, its offering of reinstatement in other positions as alternative reasonable accommodation and Mercado's breakdown of the interactive process preclude any liability against it as a matter of fact and law.

It is uncontested that Mercado communicated with Walmart for the last time during her employment on April 11, 2016, when she submitted her second reasonable-accommodation request packet. Moreover, it was not until December 16, 2016, two weeks after her dismissal, when Mercado informed Walmart that she had not responded to the job offers because the positions were "part-time and the pay per hour is much lower than what [she] was receiving [as Assistant Manager]." **ECF No. 43-46** at 1. Furthermore, around April or May 2016, Mercado had applied to the position of Home Merchandise Assistant Manager. However, the record is not clear as to whether that position was equivalent to her Assistant Manager job, and whether she was qualified for it. Additionally, the company's reasons for disqualifying Mercado for that position are not clear, either.

In light of the above, the Court finds that Walmart engaged in an interactive process with Mercado to find alternative positions for her. However, if the ability to lift up to twenty-five

pounds without assistance was not an essential requirement of the Assistant Manager position in practice, Mercado could have been reinstated in the Assistant Manager position with her ten-pound lifting restriction. And even if the lifting requirement in question was essential to the job, Mercado claims that she could have easily been reinstated with lifting assistance as reasonable accommodation, given that Associates on the floor were readily available to provide such assistance as part of their job. In any event, whether Walmart's offer to Mercado of reassignment to lower-paying, part-time positions constituted reasonable accommodation is contingent on whether there were no reasonable means to enable her to be reinstated in the Assistant Manager position or in an equivalent job vacancy for which she was qualified, all of which is at controversy in this case. *See* 29 C.F.R. App. § 1630.2(o); *Matos*, 317 F. Supp.3d at 503; *Chao*, 257 F.Supp.3d at 77.

### E.	Mercado Failed to Establish an Actionable Claim of Retaliatory Hostile Work Environment.

### 1.	Applicable Law

Both ADA and Title VII prohibit retaliation against an employee for, among other grounds, having opposed any practice made unlawful by either law. 42 U.S.C. §§ 12203(a) and § 2000e-3. Furthermore, under the ADA, requesting reasonable accommodation and/or disability-related benefits, such as leaves of absence, may constitute protected conduct under anti-retaliation provisions insofar as a retaliatory action by an employer may dissuade a reasonable worker from making such requests. *See Thomspon v. North American Stainless, LP*, 562

U.S. 170, 173-175 (2011); *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006).

In some cases, the alleged retaliation may entail a hostile work environment and/or toleration

of harassment in the workplace for having incurred in a protected conduct. *See Noviello v. City*

*of Boston*, 398 F.3d 76, 88-95 (1st Cir. 2005).

For an employer's action to amount to retaliation in violation of the ADA, it must

substantially affect employment or alter the conditions of the workplace, typically involving

discrete changes in the terms of employment such as hiring, firing, failing to promote, and/or

lower salary or benefits. *Morales-Vallellanes v. Potter*, 605 F.3d 27, 35-36 (1st Cir. 2010); *see Bhatti*

*v. Trustees of Boston University*, 659 F.3d 64, 73 (1st Cir. 2011); *Shervin v. Partners Healthcare System,*

*Inc.*, 804 F.3d 23, 33 (1st Cir. 2015). In that respect, the First Circuit Court of Appeals has held

consistently that employment actions such as work schedule changes, lateral transfers and

negative performance evaluations in themselves do not constitute actionable adverse

employment action unless these entail "a demotion in form or substance." *Marrero v. Goya*, 304

F.3d 7, 23 (1st Cir. 2002); *see also Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 43 (1st

Cir. 2011); *Morales-Vallellanes*, 605 F.3d at 35-36, *Cham v. Station Operators, Inc.*, 685 F.3d 87, 94-95

(1st Cir. 2012). In the context of a claim of retaliatory hostile work environment, a plaintiff "must

show that his 'workplace [was] permeated with discriminatory intimidation, ridicule, and insult

that [was] sufficiently severe or pervasive to alter de conditions of . . . [his] employment and

create an abusive working environment.'" *Quiles-Quiles v. Henderson*, 439 F.3d 1, 7 (1st Cir. 2006)

(quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).

## 2. Discussion

Walmart contends that even if Mercado had exhausted administrative remedies as to her claim of retaliatory hostile work environment, the alleged acts do not amount to an actionable claim. **ECF Nos. 39-1**; **41** at 14-20. Mercado alleges that she experienced a retaliatory hostile working environment for having requested reasonable accommodation and for receiving short-term disability benefits. **ECF No. 1** at 5. Specifically, she alleges that

> Mercado began working again on July 13, 2015. On said date the discriminatory conduct, harassment and hostile environment became blatant. As part of the discriminatory conduct, the medical recommendations and the request for reasonable accommodation were completely ignored by Sam's Club. Sam's Club forced Mercado to work six (6) continuous days; assigned her ten (10) hour shifts; and oftentimes they left her working alone during shifts which were normally assigned to three (3) or four (4) managers. Sam's Club also transferred her to the receiving area. These discriminatory actions, because of her disability, were deliberately undertaken in retaliation for Mercado's requests for reasonable accommodation and for requesting and receiving benefits under SINOT.

*Id.* Mercado reasserted the above allegations in her deposition, and added that Assistant Manager Juan Carlos Torres allegedly mocked her and spoke negatively about her to other colleagues, and was responsible for her allegedly onerous work schedule. **ECF No. 39-6** at 196-212.

As discussed above, the Court holds that Mercado did not exhaust administrative remedies as to her claim of retaliatory hostile work environment. Assuming, *arguendo*, that she

had, Mercado did not meet her burden to establish an actionable claim. It is uncontested that: (i) the alleged acts took place during less than one month; (ii) ten-hour workdays and six-day workweeks were standard for Assistant Managers at Sam's Club; (iii) during the time period in question, the company had not yet decided on Mercado's treating physician's eight-hour-workday recommendation; (iv) Mercado did not work six consecutive workdays; (v) she worked alone on a sole occasion during a back-to-school event, as did another colleague; (vi) her transfer to the receiving department took place months prior to her request for reasonable accommodation; and (vii) said transfer was one of several interrelated transfers and did not entail reduction in salary, benefits, or occupational classification.

Thus, none of the alleged acts entailed a demotion in form or in substance, nor were said acts, taken as a whole, sufficiently severe or pervasive to rise to the level of a hostile working environment under the stringent First Circuit standards. In fact, the District of Puerto Rico has summarily dismissed, and the First Circuit Court of Appeals has affirmed, dismissals of claims of hostile work environment under various anti-discrimination laws in more severe cases.[7] Accordingly, Walmart's summary-judgment motion is hereby **GRANTED** in relation to plaintiffs' claim of retaliatory hostile work environment.

### F.  Genuine Issues of Fact Preclude Summary Judgment as to Mercado's Claim of Discriminatory and Retaliatory Discharge.

---

[7] *See, e.g., Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 57 (1st Cir. 2006); *Kosereis v. Rhode Island,* 331 F.3d 207, 216 (1st Cir. 2003); *Marrero v. Goya*, 304 F.3d 7, 23 (1st Cir. 2002); *Fernández-Ocasio v. Walmart Puerto Rico, Inc.,* 94 F. Supp.3d 160, 178 (D.P.R. 2015); *Rodriguez-Fonseca v. Baxter Healthcare Corp. of Puerto Rico*, 899 F. Supp.2d 141 (D.P.R. 2012); *Marrero v. Schindler Elevator Corp.,* 494 F. Supp.2d 102, 110 (D.P.R. 2007); *Villegas-Reyes v. Universidad Interamericana de P.R.*, 476 F. Supp.2d 84, 91 (D.P.R. 2007).

### 1- Applicable Law

A claimant may prevail in a discriminatory discharge claim under the ADA by demonstrating that she is a disabled person with a disability under the ADA who can perform the essential functions of the job with or without reasonable accommodation as defined by said statute, and that she was subject to an adverse employment action due wholly or partly to her disability. *Soto-Ocasio*, 150 F.3d at 18. A qualified individual with a disability under the ADA may prove her disability-based employment discrimination with direct evidence, and absent the same, with circumstantial evidence under the *McDonnell Douglas* burden-shifting test applicable to employment discrimination cases.

Pursuant to the aforementioned burden-shifting test, a plaintiff may establish an inference of disability discrimination under the ADA by showing that she: (1) had a disability within the meaning of the ADA; (2) was qualified to perform the essential functions of the job with or without reasonable accommodation; (3) suffered an adverse employment action; (4) was replaced by or treated less favorably than a non-disabled person; and (5) suffered damages as a result. *Ramos-Echevarría v. Pichis, Inc.*, 659 F.3d 182, 186 (1st Cir. 2011). If a plaintiff establishes a prima facie case of discrimination, the employer has the burden of producing a legitimate, nondiscriminatory reason for its action;"[i]f the employer does so, the focus shifts back to the plaintiff, who must show, by a preponderance of the evidence, that the employer's articulated reason for the adverse employment action is pretextual and that the true reason for the adverse

action is discriminatory." *Gómez-González*, 626 F.3d at 662 (citations and internal quotation marks omitted).

The threshold question of the third prong mentioned above is whether the acts or omissions alleged by a claimant amount to an adverse employment action. *Ramos-Echevarría*, 659 F.3d at 186. Furthermore, the fourth prong's central issue is whether an adverse employment action is due in whole or in part to a claimant's disability. *Id*. In that respect, to survive summary judgment, a claimant "must establish that a causal connection exists between his disability and the adverse employment action. He must proffer sufficient evidence that his employers were motivated by discriminatory animus." *Salamo Martínez v. Celulares Telefónica, Inc.*, 272 F. Supp.2d 144 (D.P.R. 2003); *see also Ramos-Echevarría,* 659 F.3d at 186; *E.E.O.C. v. Amego, Inc.*, 110 F.3d 135, 141 (1st Cir.1997).

As discussed above, it is illegal under the ADA for an employer to retaliate against an employee with a disability for opposing unlawful practices under said law, including a request for reasonable accommodation and opposing alleged unlawful denials of the same. 42 U.S.C. 12203(a); *see Thompson*, 562 U.S. at 173-175. As with a cause of action of discriminatory dismissal, a claimant may establish an actionable claim of retaliatory discharge with either direct or circumstantial evidence. *DeCAire v. Mukasey*, 530 F.3d 1, 20 (1st Cir. 2008). Absent direct evidence to establish a prima facie case of retaliation, the plaintiff must show under the *McDonell Douglas* burden shifting test that: (1) he/she engaged in protected conduct; (2) he/she suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and

the adverse employment action. *Freadman v. Metro Prop. & Cas. Ins. Co.*, 484 F.3d 91, 106 (1st Cir. 2007); *Thomson v. North American Stainless LP.*, 562 U.S. at 173-175. In turn, the defendant must articulate a legitimate, non-retaliatory reason for the adverse action, in which case, plaintiff must establish that the proffered reason was pretextual. *Collazo. v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir. 2010).

In proper circumstances, the required causal connection may be established by temporal proximity between the relevant events, but the proximity must be very close. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Moreover, "[t]o defeat summary judgment in a retaliation case, a plaintiff must point to some evidence of retaliation by a pertinent decisionmaker." *Sánchez-Rodríguez v. AT & T Mobility P.R., Inc.*, 673 F.3d 1, 15 (1st Cir. 2012). In addition, "the employee must show that the retaliator knew about her protected activity—after all, one cannot have been motivated to retaliate by something he was unaware of." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013).

2.      **Discussion**

Walmart contends that Mercado's dismissal was solely for job abandonment, resulting from Mercado's inexcusable failure to communicate at all with the company since her second request for reasonable accommodation on April 11, 2016, notwithstanding Walmart's follow-up letters to her of April 22, May 2, July 21, and August 9, 2016. **ECF Nos. 39** at 3-4; **39-1** at 15-19; **41** at 13-14, 24-25. As summarized above, in those letters, Walmart requested Mercado to communicate with the company regarding pending medical information about her ten-pound

lifting restriction, the company's denial of Mercado's second request for reasonable accommodation, Walmart's offers of job reassignment to two alternative part-time positions, and the upcoming expiration of her leave of absence under Walmart's policies.

In that respect, Walmart avers that Mercado failed to establish a prima facie case of discriminatory or retaliatory discharge under the ADA. **ECF Nos. 39** at 3-4; **41** at 13-14, 24-25. Specifically, according to Walmart, Mercado is unable to establish that her dismissal is causally related in any way with either her status as disabled or her request for reasonable accommodation. Walmart is emphatic that it went beyond its legal obligations toward Mercado in providing her with extensive leave and other benefits, and in attempting to reinstate her after her back surgery. According to the company, it was Mercado who willfully cut off the interactive process, which in turn left Walmart with no choice but to conclude that she was not interested in returning to work.

Conversely, according to Mercado, she was dismissed under the pretext that she could not perform the essential duties of her job as Assistant Manager because of her ten-pound lifting restriction, even though it was common practice at Sam's Club to ask and obtain help from colleagues to lift objects when they were unable to do so on their own. **ECF No. 46** at 17-27; **47**; **55**. In that respect, she contends that her dismissal resulted from her request of reinstatement as Assistant Manager with the lifting restriction as reasonable accommodation.

In short, the Court holds that issues of material fact preclude summary disposition as to Mercado's claim of discriminatory and retaliatory discharge, for which summary judgment is hereby DENIED as to that claim.

### G.    Claims under Puerto Rico laws

Plaintiffs' Puerto Rico and federal claims derive from the same nucleus of operative facts. *See* 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). **ECF No. 1**. As such, the Court hereby exercises supplemental jurisdiction over the remaining Puerto Rico law claims at summary judgment. *Id*. We hereby incorporate by reference the list of Puerto Rico statutes (and their corresponding citations) included above under which plaintiffs filed the instant case.

### 1.    Law 100

In her complaint, plaintiff alleges conclusorily that "[t]he actions and omissions of all defendants constitute age discrimination, harassment and retaliation in violation of [Puerto Rico's] Law 100 and [L]aw 155." **ECF No. 1** at 8. Puerto Rico's Law 100, 29 L.P.R.A. § 146 et seq., prohibits discrimination based on: age; race; color; sex; sexual orientation; gender identity; social or national origin; social condition; political affiliation; political or religious beliefs; for being a victim, or perceived as a victim, of domestic violence, sexual assault or stalking; or for being a servicemember or ex-servicemember in the United States Armed Forces, or holding veteran status. *See Alvarez-Fonseca v. Pepsi Cola Bottling Co.*, 152 F.3d 17, 23-24 (1st Cir. 1998). However, as discussed above, Mercado asserts in this litigation that the sole basis upon which she claims

employment discrimination and retaliation by Walmart is for being a qualified disabled individual under the ADA. **ECF Nos. 39-6** at 70; **46** at 8-17; **55** at 2-3. Accordingly, since disability status is not a protected category under Law 100, the Court hereby **GRANTS** Walmart's summary judgment motion as to plaintiff's claim of discrimination under Law 100.

### 2. Law 115

Plaintiffs assert a retaliation claim under Puerto Rico Law 115, which makes it unlawful for an employer to discharge or discriminate against employees because "they offer or attempt to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico." P.R. Laws Ann. tit. 29 § 194(a); *see Salgado-Candelario v. Ericson Caribbean, Inc.*, 614 F. Supp.2d 151, 177 (D.P.R. 2008); **ECF No. 1**. On September 29, 2014, Law 115 was amended and expanded by Law 169 to protect employees from relation for offering testimony, providing or attempting to provide information, or otherwise participating in an internal investigation in the workplace, or offering this information to any company employee or representative in a position of authority. *Id*. In this case, the Court denies summary judgment regarding plaintiff's retaliatory discharge claim under the ADA. Likewise, the Court **DENIES** summary judgment as to plaintiff's Law 115 claim.

### 3. Law 80

Law 80 is Puerto Rico's unjust dismissal statute. 29 L.P.R. § 185a et seq.; *Otero-Burgos v. Inter American University*, 558 F.3d 1, 7-9 (1st Cir. 2009). It defines just cause for dismissal, and

provides a severance-payment remedy for those employees who can establish that they were wrongfully dismissed pursuant to that statute. In the instant case, the Court denies defendant's summary judgment motion regarding plaintiff's claim of disability-based discrimination and retaliation under the ADA as to Mercado's dismissal. Therefore, Walmart's motion for summary judgment is hereby **DENIED** as well regarding plaintiff's similar claim of unjust dismissal under Law 80.

## V. Conclusion

Having concluded that Mercado is a disabled individual under the ADA, as amended by the ADAAA, the Court finds that genuine issues of fact warrant a jury trial to determine: (i) whether Mercado was able to perform the essential duties of the Assistant Manager position with or without reasonable accommodation; (ii) whether Mercado's dismissal was due to her request for reinstatement after back surgery as Assistant Manager with a ten-pound lifting restriction; and (iii) whether Walmart's offer of lower-paying, part-time positions constituted reasonable accommodation.

Accordingly, defendant's motion for summary judgment (**ECF No. 39**) is hereby **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court **GRANTS** Walmart's summary judgment motion regarding Mercado's claim of disability-based, retaliatory hostile work environment under the ADA, and as to Mercado's claim of age discrimination under

Puerto Rico's Law 100. The Court **DENIES** Walmart's summary judgment motion as to every other claim.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 29th day of March, 2019.

S/AIDA M. DELGADO-COLÓN
**United States District Judge**